**REED v. SPILLER et al.**

No. 10331.

Court of Civil Appeals of Texas. San Antonio.

June 22, 1938.

Purl & Pearson and T. H. Burruss, all of Corpus Christi, for appellant.

J. Marvin Ericson and Charles G. Lyman, both of Corpus Christi, for appellees.

MURRAY, Justice.

H. G. Spiller and Verna F. Woods instituted this suit in the 28th District Court of Nueces County against H. M. Reed, seeking to have a receiver appointed to take charge of a certain oil lease on a tract of land in Nueces County. It was alleged that there was a completed oil well upon this lease, and that the oil and gas mineral estate was owned in the following proportions: Verna F. Woods, ⅔ of seven-eighths; H. G. Spiller, ⅙ of seven-eighths; H. M. Reed, ⅚ of seven-eighths. The remainder of the mineral estate is alleged to belong to M. M. Harmon and wife, Oma Harmon, and W. H. Flood and wife, Sena Flood. It is further alleged that the plaintiffs below entered into an agreement whereby H. M. Reed was to operate the oil well drilled upon the leasehold mineral estate. There were a great many stipulations in the agreement not necessary to set out here.

It is further alleged that plaintiffs and defendant had a lawsuit with reference to the operation of the well, in which defendant, H. M. Reed, was successful, and in settlement of this lawsuit the parties made another agreement with reference to the operation of the well. This agreement provided that Reed should operate the well and should be paid actual cost thereof, not to exceed $100 per month, unless a greater amount should be authorized in writing by the third party to the contract, to-wit: Corpus Christi Bank and Trust Company, which the parties agreed upon and appointed to receive and disburse the proceeds from the well. The agreement further provided that Reed was to make monthly statements of expenses to the bank.

Plaintiffs' petition further alleges that by a separate agreement Reed agreed to furnish Spiller with a monthly statement of oil runs, and at the time of the agreements referred to Reed presented his claim for the operation of said well for the preceding six months and "did assure the plaintiffs that such item would not exceed the sum of Six Hundred and no/100 ($600.00) Dollars" and agreed that this was the amount to be paid.

Plaintiffs next allege that Reed presented to the Bank "a claim greatly in excess of the sum of Six Hundred & No/100 ($600.00) Dollars" for said six months' period, "thereby jeopardizing the interest of these plaintiffs."

Plaintiffs further allege that defendant, "in total disregard and violation of said agreements and obligations," has permitted the acquisition of a lien for working over said well; that Reed was obligated to pay this claim but has not paid it, and such conduct entitles plaintiffs to the ex parte appointment of a receiver.

Plaintiffs further allege that Reed has caused the well to be closed in and that other wells are draining the premises, and for this reason plaintiffs are entitled to an ex parte appointment of a receiver.

It is further alleged that Reed has failed to present monthly reports of oil runs and has possession of said property to the exclusion of plaintiffs; and that he has failed to furnish inventory of personal property "and these plaintiffs have reason to believe and do believe" that defendant has disposed of an unknown amount of this personal property, and plaintiffs fear that defendant will use his exclusive possession to further waste the personal property.

Paragraphs XV and XVI and the prayer of the petition read as follows:

"Plaintiffs would show that by reason of the mismanagement and improper operation of said well by the defendant, and that by reason of said well being shut down and taken off production by the defendant, or by reason of the defendant's having caused same to be done, and that by reason of the defendant's permitting and procuring third persons to assert claims against said well and against these plaintiffs' interest and ownership therein, and to threaten to affix and perfect liens against the same for alleged items asserted to have been authorized by the defendant, and that by reason of his failure to deliver reports of the monthly runs of said well to plaintiffs, all of which was done by the defendant without authority of these plaintiffs and in total violation of the solemn promise and obligation of the defendant as set forth in his contract and agreement of June 1, 1937, set forth herein, the plaintiffs have suffered great damage in

sums and amounts unknown to plaintiffs by reason of the fact that defendant has had possession and control of all of said property to the entire exclusion of plaintiffs. Plaintiffs say they are entitled to a full accounting by defendant of all transactions in connection with the operation and management of said well, premises, and all properties, and here now demand production of all, each and every original record, voucher and account upon the trial hereof, otherwise secondary evidence thereof will be given.

"Plaintiffs would further show to the court that the wrongful actions and conduct of the defendant, as hereinabove set forth, has greatly injured and damaged the interests and ownership of the plaintiffs in said well and premises, and that if the said defendant be permitted to continue in control and possession of said premises, he will use said possession to waste said property and permit the same to be wasted, and will permit the same to be incumbered with liens, and the interests and ownership of these plaintiffs in the leasehold estate, well and other property will be irreparably injured or entirely lost. The defendant has failed and refused and does now. fail and refuse to allow or permit plaintiffs to have or exercise any part in the management or control of said well and property, and denies them any participation therein. Plaintiffs would show that they have no other adequate remedy either at law or in equity, and that unless a receiver be appointed ex parte to take over, control and operate said premises under orders of this court, their interests in said lands and premises, the leasehold estate therein, and in said well, will be wasted, destroyed and lost by the improper and wrongful management thereof by the defendant and these plaintiffs will suffer irreparable injury.

"Wherefore, premises considered, plaintiffs pray that defendant be cited to appear and answer herein, and upon final trial that plaintiffs have judgment against defendant for such damages as they may show themselves justly entitled; and further, that pending this litigation, this Honorable Court appoint a receiver, ex parte, to take charge of, conserve, manage, control and operate said well and property for the benefit of all of the parties rightfully entitled to the same under the orders of this Honorable Court, and that such appointment give and confer upon such receiver ample and sufficient power to so conserve, preserve, manage, control and operate said well and premises; for costs of suit, and for such other relief, special and general, at law and in equity, to which they may be justly entitled."

Sena Flood intervened in the lawsuit, alleging that she had an interest in the oil well and leased premises and joined the plaintiffs in a request that a receiver be appointed.

The trial judge granted the receivership without notice to the defendant and without hearing evidence, so far as the record here shows, other than the petition and the exhibits attached thereto. From this judgment the defendant below, H. M. Reed, has prosecuted this appeal.

■ Neither the petition of the plaintiffs below nor the petition of the intervener sets forth facts showing a necessity for the appointment of a receiver. It is true the petition alleges the oil well was shut in, but it does not allege that this was not done by order of the Railroad Commission, or that it was not necessary to be done. It further alleges that reports were not made, but it does not allege that there was anything to report. It also alleges the expenditure of certain sums of money, but it does not allege that these were not allowed by the bank, which, under the contract, was authorized to pass on expenditures. The petition does not show any wrongdoing on the part of appellant. There is no allegation that a receiver could do anything other than what was being done at the time by Reed. Vernon's Ann.C.S. Art. 2293; 23 R.C.L. 18; 36 Tex.Jur. 98; 36 Tex.Jur. 62; Kottwitz v. Jehn, Tex.Civ. App., 6 S.W.2d 209.

■ The trial court erred in appointing a receiver for the further reason that the petition does not show a cause of action within the jurisdiction of the court. It is not a suit for any specific sum of money, nor for anything of any alleged value. Oatman v. Boone, Mayor, Tex.Civ.App., 244 S.W. 398; Style v. Lantrip, Tex.Civ.App., 171 S.W. 786; Prescott v. McCann, Tex.Civ.App., 60 S.W.2d 548; Lubbock Oil Refining Co. v. Bourn, Tex.Civ.App., 96 S.W.2d 569.; Junkin v. Sterchi Furniture Co., Tex.CivApp., 92 S.W.2d 1098.

■ Furthermore the court should not have appointed a receiver without notice and hearing to the defendant, because the petition does not allege facts showing that a material injury would have been suffered by the plaintiffs and intervener by reason of the delay necessary for the giving of notice of a hearing. C. P. Oil Co. v. Shelton, Tex.Civ. App., 48 S.W.2d 509; Corsicana Hotel Co. of Texas v. Kell, Tex.Civ.App., 66 S.W.2d

760; 36 Tex.Jur. pp. 104 to 107; Shell Petroleum Corporation v. State, Tex.Civ.App., 86 S.W.2d 245; Lone Star Building & Loan Association of Houston v. State, Tex.Civ. App., 91 S.W.2d 941; Underwood v. Clark, Tex.Civ.App., 103 S.W.2d 199.

For the reasons above stated, the judgment will be reversed and the cause remanded.